## No. 8081.

STATE OF LOUISIANA EX REL. SUSAN HOWARD VS. JOHN J. WALSH, CONSTABLE.

Relator applies to this Court for a writ of *Habeas Corpus* on the ground that she is illegally imprisoned by order of the Eighth Justice of the Peace of the Parish of Orleans, whilst there is now no such magistrate in existence, said office having been abolished by the Constitution of 1879.

HELD that the court of the Eighth Justice of the Peace of the Parish of Orleans, *as a police court*, was not interfered with by the present Constitution and is still in force, subject to the future action of the Legislature, as provided for in Article 136 of said Constitution.

Frank Hébert for the Relator.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an application for a *habeas corpus*, on the sole ground that the prisoner was arrested and is detained in custody by the defendant, under a *mittimus* issued by one P. Mitchell, styling himself Judge of the Eighth Justice's Court for the City of New Orleans, and that there is no such court in legal existence. The return shows the caption and exhibits the *mittimus* in justification thereof and of the detention.

The existence or non-existence of such court is, therefore, the solitary question submitted for our determination.

When the City of New Orleans was reorganized in 1870, under the provisions of Act 7 of that year, its territory was divided into *six* Municipal Districts, sec. 3, p. 31, over which *six* recorders (who were to be justices and conservators of the peace) were to exercise the criminal jurisdiction previously vested in the recorders of said city. Sec. 31, par. 4, pp. 43, 44.

In 1873, by Act 95, those offices were abolished, and *four* Municipal Police Courts were created and organized in their stead. The first court was to have jurisdiction over the first district ; the second court over the second district ; the third court over the third and fifth districts ; the fourth court over the fourth and sixth districts. Their jurisdiction was defined. It was to be exclusively criminal, and to be akin to that

of the former recorders. It was not extended beyond, and was, therefore, restricted to, those territorial limits.

Up to 1874, there had been *seven* Justices of the Peace in legal existence in the city, clothed with civil jurisdiction only. By Act 129 of that year, criminal jurisdiction was conferred on the Seventh Justice of the Peace, and made to extend over the SIXTH Municipal District, thus divesting the Fourth Municipal Court of such jurisdiction over that section.

In 1877, by Act 59, a municipal district was created by law, and added to the municipal territory of New Orleans, and an additional Justice of the Peace Court was located in said Seventh Municipal District, to be known as the "Eighth Justice's Court of the Parish of Orleans." He was to be, and was, clothed with civil and, besides, criminal jurisdiction as committing magistrate, with powers alike to those possessed by the Municipal Police Courts then in existence.

By Act 131, p. 199, of the same year, subsequently adopted, the *four* Municipal Courts were abolished and *two* Recorders' Courts were created ; the first to have jurisdiction over the First and Fourth Districts, and the second, over the Second, Third and Fifth. They were vested with the criminal jurisdiction with which the Municipal Police Courts had been clothed.

In 1878, by Act 11, the Fifth Justice of the Peace was given exclusive criminal jurisdiction over all the portion of the city lying on the right bank of the River Mississippi, and that this jurisdiction was to be of the same nature as that which the Recorders of the city then possessed by law.

So that, on the 31st December, 1879, the *seven* Municipal Districts of the City of New Orleans were subjected to criminal jurisdiction, as exercised by committing magistrates, as follows :

The First and Fourth Districts were under the jurisdiction of the First Recorder's Court ; the Second and Third Districts, under that of the Second Recorder's ; the Fifth, under that of the Fifth Justice of the Peace ; the Sixth, under that of the Seventh Justice of the Peace, and the Seventh, under that of the Eighth Justice of the Peace.

On the 1st of January, 1880, the Constitution framed in 1879 was promulgated.

It contemplated to provide for the government of the State of Louisiana and to repeal certain, and maintain other, laws in existence previous to its adoption. A considerable portion of that important instrument is devoted to that branch of the government which is indispensably necessary to the application of the law and the administration of justice in the State.

It provides generally, that the judiciary shall consist of a Supreme

Court, of Courts of Appeals, District Courts and Justices of the Peace, (Art. 80); and further, specially, of City Courts for the City of New Orleans (Art. 135), and of police and magistrates' courts. (Art. 136.)

By article 258 it is declared, that all laws *not inconsistent* with the Constitution, shall continue in force as if the Constitution had not been adopted.

By article 259, it is declared that no office shall be superseded by the Constitution; that the laws relative to executive, *judicial* and military officers shall remain in *full* force though contrary to it, and that the duties of those officers shall be performed according to those laws, *until* the organization of the government under that Constitution and the entering into office of the *new* officers to be appointed or elected under said government, and no longer.

The question which presents itself for solution in the examination of the quick of the case is, whether the law, which created the " Eighth Justice's Court " for the City of New Orleans, was or not inconsistent with the Constitution at the time it went into force.

If it was inconsistent in its entirety, it was abrogated; if it was inconsistent in part, it was, to that extent, repealed; if it was consistent in its entirety, it was continued in force; if it was consistent in part, it was continued in force to the extent that it was so consistent. It died or lived, as it conflicted or harmonized with the organic law.

It is claimed that it was inconsistent in its entirety; that it was, therefore, abrogated; and, consequently, that the commitment mentioned in the case of the State against the relatrix, by one styling himself " Eighth Justice of the Peace," and directed to the defendant as constable, is an absolute nullity, and that the prisoner must be released from custody.

It is contended, in support of that theory, that by article 125 of the Constitution, relative to Justices of the Peace, it is provided that, thereafter there shall be as many such justices *out* of the parish of Orleans as may be provided by law, but that *in* the parish of Orleans, there shall thereafter exist NONE AT ALL.

The first paragraph of article 125 reads as follows :

" In each parish, the parish of Orleans excepted, there shall be as many justices as may be provided by law."

The following paragraphs of the same article maintain the number of justices of the peace then in existence and define their *civil* jurisdiction. The next article (126) provides, that they shall have *criminal* jurisdiction and power to bail in cases not capital or punishable at hard labor.

We do not read article 125 in the light contended for. We consider that the framers of the Constitution intended by articles 125 and 126 to

provide exclusively for justices of the peace *out* of the parish of Orleans, and, when using the words " *the parish of Orleans excepted*," proposed to leave the justices in that parish out of view for the moment, proposing soon to deal with them to some extent by a subsequent article (135), but *only* so far as they exercised *civil* jurisdiction.

Those courts have continued to exist in all cases, *except* those in which the Constitution has abolished them or has restricted their jurisdiction.

It should be borne in mind that at the time that the Constitution went into effect, there were *eight* justices of the peace and, besides, *two* recorders (who were also justices of the peace), who exercised in the City of New Orleans jurisdiction either in civil cases exclusively or in criminal cases exclusively, or in *both*.

Among the latter was the "Eighth Justice of the Peace Court," which had been clothed with *both* civil and *criminal* jurisdiction.

It is a self-evident proposition, which no reasonable being can or does dispute, that by the creation of City Courts in the City of New Orleans, vested with civil jurisdiction solely, under article 135, the framers of the Constitution proposed, as well to abolish the courts of Justices of the Peace exercising civil jurisdiction only, as to strip of *such* jurisdiction those that exercised *both* civil and criminal jurisdiction, as to continue in the latter the last jurisdiction when not provided to be exercised otherwise by the Constitution or by unprohibited subsequent legislation.

The Constitution, far from making any provision whatever for the exercise of criminal jurisdiction by committing magistrates for the City of New Orleans, has entrusted the mattter entirely to legislative wisdom, as appears conclusively by the tenor of article 136, which reads :

"The General Assembly *may* provide for police or magistrates' courts ; but such courts shall not be vested with jurisdiction beyond the enforcement of municipal ordinances or *as committing magistrates*."

Construed together with articles 125 and 126, which provide for the civil and criminal jurisdiction of justices of the peace *out* of the parish of Orleans, article 136 cannot but be interpreted as applying to *police* or magistrates' courts (whether known as Recorders or Justices of the Peace or any other name) *in* the parish of Orleans.

Justices of the Peace are conservators of the peace, and have always been considered as police committing magistrates exercising criminal jurisdiction, though at times clothed with civil jurisdiction, exclusively, or in addition.  C. P. 1060.

Abbott, Bouvier, Burrill Dic. vol. 1, *Vo.* Justice of the Peace ; Bacon's Abridgment, vol. 3, p. 787 ; 1 Chitty's Blackstone, 354 ; Sec. 1 of Act of 1804, p. 30, ch. VIII ; Secs. 23, 25, of Act of 1805, p. 206, p. XXV.

The original article in the Code of Practice, from the beginning, has continued, through the revision of 1870, to this day to read, (C. P. 1060): "Justices of the Peace have jurisdiction both in civil and criminal matters."

The theory in support of the application for the writ is the less plausible as it is in flagrant conflict with article 259 of the Constitution, which deals with inconsistent laws and with officers in existence under them.

It distinctly provides, that such inconsistent laws shall continue in force and that the officers thereunder shall remain in office until the organization of the government under the Constitution, and until the entering into office of the *new* officers to be appointed or elected under said government.

Inconsistent laws and officers *in esse* under them, were, therefore, to continue in existence until the happening of two events : 1st, the organization of the government; and, 2d, the induction into office of the *new* officers to be appointed or elected under said government.

It is true that a government has been organized, and that new officers have been appointed and elected under that government, but has the Court in question been thereby abolished and the judgeship thereof been vacated ?

As a preliminary question, we propose to settle that all offices have not been vacated by the mere adoption of the Constitution.

Offices, created by laws consistent with it, have continued to exist (article 258); offices, created by law inconsistent with it, were to continue in existence *until* the organization of the government, *and* until *new* officers were appointed or elected under it. So it is, for instance, that the Mayor and Administrators, that the Recorders of the City of New Orleans, that Notaries Public throughout the State, have continued in their functions ; so it is, likewise, on the other hand, that the district and parish courts throughout the State, the justices of the peace exercising a merely civil jurisdiction in New Orleans, prior to the adoption of the Constitution, have now absolutely disappeared.

It cannot be supposed for a moment that it ever entered the mind of the framers of the Constitution to leave any portion of the territory of the City of New Orleans and the inhabitants thereof in a state of emancipation from the criminal jurisdiction of a committing magistrate, at the mercy of the villains and wicked, and to refuse them the protection to which property, life, personal and other rights are entitled.

If it be true that the law creating the " Eighth Justice's Court of the parish of Orleans " has died away, it can only be because the government contemplated by the Constitution has been organized, and that

the *new* officers intended by it have been appointed or elected to super-cede that court.

Where is, in that Constitution, the provision which relates to the cre-ation of a court or to the appointment or election of a judicial officer to supersede the said Eighth Justice Court and the judge thereof, clothed with similar criminal jurisdiction over the Seventh Municipal District of New Orleans? If there be such provision, and such new court has been organized and the new judge thereof has been appointed or elected and has been commissioned, then the Eighth Justice's Court has ceased to exist and has been replaced by another court with another judicial officer. But no such provision is to be found in that Constitution. Hence, no court has superseded the "Eighth Justice's Court of the parish of Orleans," and no appointment or election of a judge to it has or can be made un-less a vacancy occurs.

The framers of the Constitution had more important matters to deal with than to provide specially for a system of inferior judicial criminal organizations for the City of New Orleans. They were unwilling to con-descend to those details, and have made them expressly, by article 136, a legitimate subject for consideration within the control of the General Assembly.

The Legislature has met since the Constitution of 1879 has gone into effect, and has not deemed proper to eliminate, as it might have consti-tutionally done, the "Eighth Justice's Court of the parish of Orleans," either by abolishing it altogether formally, or by extending over the Seventh Municipal District the criminal jurisdiction of one of the two police courts now in existence or some other judicial authority.

By the mere going into operation of the Constitution, neither the court of the Fifth Justice of the Peace, nor that of the Eighth Justice, exercising *criminal* jurisdiction, nor the two courts of Recorders of New Orleans, have been interfered with. They have been bridged over, and remain subject to legislative action by the General Assembly under article 136 of the Constitution.

Otherwise, there would exist a most lamentable *hiatus,* which it cannot be presumed the framers of the Constitution intended to leave. We are satisfied, and as the expounders of the law, wherever found, whether in the Constitution or in the Statute Book, we now declare, that they *have not left* any such *hiatus.*

It is true that the Seventh Municipal District of the City of New Orleans, as much as any other portion of the State, is subject to the criminal jurisdiction of all the judges therein, who are *virtute officii* conservators of the peace (Art. 86), and that a *capias* issued on affidavit by any such judge for the commission of an offense, can be legally ex-ecuted within said district, and anywhere in the State; but it was not

intended by the Constitution that such powers should be exercised by such judges, unless in cases of the extremest necessity. It cannot be supposed that it ever contemplated that upon such judges, to whom other functions are assigned by law, would afterwards devolve the duty of trying parties thus arrested. Therefore, it is that committing magistrates have been created throughout the State as well by the Constitution as by statute. The Eighth Justice's Court was created by law in 1877. It has continued so far, and will remain, in existence until abolished by the same power that brought it to life, inasmuch as the Constitution now in force has not done away with it. How can it be claimed that the Convention intended that there should be a committing magistrate clothed with criminal jurisdiction in every section of the City of New Orleans except the Fifth and Seventh Municipal Districts? Why the difference in the supervision and protection awarded?

The rights of the inhabitants of the Seventh Municipal District of New Orleans, and of the people generally, have not been, as is claimed, forgotten or overridden by the framers of the Constitution, and are entitled to all the protection which it was originally intended by the Legislature that the court in question should afford them.

In the case of the State vs. Cheevers, 32 A. 649, we held that the Fourth Judicial District Court, having been abolished by the Constitution, passed from existence on the first Monday of April of the present year, when it was *instantly* replaced by a court created by that Constitution, with enlarged powers, but more restricted territorial jurisdiction, and that the officer elected and commissioned to fill the office of judge of the new court had a right to enter immediately upon the discharge of the functions of his office, except in the case in which he was a defendant before that court.

In the case of the State vs. Pardee, 32 A. 639, which presented glaring features entirely different, which a sensible, unprejudiced mind cannot fail at first blush to realize, we held that, although the territory or circumscription over which the Second Judicial District Court previously entertained jurisdiction, had been restricted, the Constitution having provided expressly for the existence of courts, civil and criminal, in the City of New Orleans, which were to go into operation on the first Monday of August, 1880, only and *not before*, over persons and things within the portion of territory left, said Second Judicial Court had been continued in existence by the Constitution until the government, as concerned it, had been organized, i. e., until the new Civil and Criminal Court for the parish of Orleans and the new judges thereof had organized and gone into operation, that is, until the first Monday of August, 1880. It was not to be until then that the Second Judicial District Court was to die away. In the present case we cannot but view and

expound the Constitution from the same standpoint and in the same light. A different construction would be an insult to the wisdom of the framers of the Constitution and a trampling under foot of the letter and spirit of the organic law.

Considering, therefore, that the Court of the "Eighth Justice of the Peace" for the City of New Orleans has been merely divested of its *civil* jurisdiction and has been continued in existence, clothed with the criminal jurisdiction which it possessed *ab initio*, and, therefore, had full authority to issue the *mittimus*, charged against in this case, which is, therefore, valid and executory,

It is ordered that the application for a *habeas corpus* in this case be dismissed, and that the prisoner be remanded, to be dealt with as the law provides.